Charlie CATO, Dorothy Jean Johnson, Walter Bolden, Ida Stanley Adamson, Ned Walker, William Howard Cross, Jeanette Clara Cross, Laura Rose Spinks, and Sandra Jacqueline Shaw, Plaintiffs,

v.

The STATE OF GEORGIA and Major Barney Ragsdale, Director of Georgia Bureau of Investigation, and Jeff C. Wayne, Solicitor, General of the Northeastern Judicial Circuit, Comprising Hall County, Defendants.

Civ. A. No. 12353.

United States District Court
N. D. Georgia,
Atlanta Division.

June 9, 1969.

Wesley R. Asinof and Charles R. Smith, Ariel V. Conlin, Atlanta, Ga., Robert B. Thompson, Gainesville, Ga., for plaintiffs.

Arthur K. Bolton, Atty. Gen., Marion O. Gordon, Mathew Robins, Asst. Attys. Gen., Hinson McAuliffe, Sol. Gen., State of Ga., Atlanta, Ga., for State of Ga. and Major Barney Ragsdale.

OPINION AND ORDER

Before BELL, Circuit Judge, and EDENFIELD and HENDERSON, District Judges.

BELL, Circuit Judge:

Complainants, with the exception of Walker, are under indictment or accusation in the state courts of Georgia for the misdemeanor offense of operating a lottery. Walker was arrested for the same offense, and released on bond. He has not been indicted, nor has a criminal accusation been filed against him.

Their complaint, with the exception of that of Walker, is that the Georgia Bureau of Investigation, acting under orders of state courts obtained by the Attorney General of Georgia, engaged in electronic surveillance of their telephones. It is alleged that certain of their conversations relating to personal matters and to matters of an incriminatory nature were intercepted and recorded. Walker's complaint differs only in that his conversation with another of the complainants, over that complainant's telephone, was intercepted.

All urge that the Georgia statute permitting such interceptions, Ga.Laws 1967, pp. 844, 847–852, (Ga.Code § 26–2005 et seq.), violates the First, Fourth, Fifth, and Sixth Amendments to the Constitution through the application of these amendments to the defendants through the Fourteenth Amendment. They also assert that the investigative warrants which authorized the interceptions, and which were to be issued under the Georgia statute only on probable cause, were defective in several respects. In addition, it is claimed that the Georgia statute fails to meet certain federal statutory standards.

The defendants are the State of Georgia, one state district attorney, and the director of the Georgia Bureau of Investigation. Jurisdiction is claimed under 28 U.S.C.A. § 1343(3) and 42 U.S.C.A. § 1983. A three-judge district court was constituted under 28 U.S.C.A. §§ 2281 and 2284. Declaratory judgment jurisdiction is premised, in addition, on 28 U.S.C.A. § 2201.

The relief sought is a declaratory judgment that the Georgia statute is unconstitutional as claimed; that complainant's right of privacy protects them from future interceptions; and that the Georgia statute violates the Supremacy Clause, Art. VI, Cl. 2, in that it conflicts with Title 18 U.S.C.A. §§ 2516(2) and 2518(3) (b), (c), (d), (4) (e), and (5), in that the Georgia statute fails to meet the minimum standards required by the federal statute. They also seek an injunction to prevent the divulgence of the interceptions previously made, and against future interceptions. We deny relief and dismiss the complaint.

Four issues are presented. Can the state prosecutions be enjoined in the face

of 28 U.S.C.A. § 2283?[1]  If not, is injunctive relief available under the allegations of the complaint to prevent the divulgence of the interceptions? Is injunctive relief available to prevent future interceptions? In any event, is declaratory relief indicated?

## I.

We began with the proposition that the state prosecutions involved are run-of-mine gambling cases. We do not have a situation involving First Amendment public rights such as free speech or debate which are in danger of being chilled by state activity. Cf. Dombrowski v. Pfister, 1965, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22; and Machesky v. Bizzell, 5 Cir., 1969, 414 F.2d 283.

The anti-injunction statute, 28 U.S.C.A. § 2283, is a rule of comity. It is to be equated with the rule of comity which prevents interference by federal courts under equity powers with state prosecutions except in the extraordinary case. Machesky v. Bizzell, supra. Whether 42 U.S.C.A. § 1983 is an express exception to § 2283 is unimportant in the view we take of the case.[2] Even if it is an express exception, complainants would still have to overcome the general comity rule which is that federal courts do not, short of extraordinary circumstances, interfere with state criminal prosecutions. As the Supreme Court said in Douglas v. City of Jeannette, 1943, 319 U.S. 157, 63 S.Ct. 877, 881, 87 L.Ed. 1324, 1329: " * * * the arrest by the federal courts of the processes of the criminal law within the states * * * [is] to be supported only on a showing of danger of irreparable injury 'both great and immediate.' " This was reaffirmed by the Supreme Court as recently as Zwickler v. Koota, 1967, 389 U.S. 241, 253, 88 S.Ct.

391, 19 L.Ed.2d 444, 453. The injury "incidental to every criminal proceeding brought lawfully and in good faith" has repeatedly been said not to constitute such irreparable injury. See Douglas v. City of Jeannette, supra, 319 U.S. at 164, 63 S.Ct. 877 at 881, 87 L.Ed. at 1330; and Dombrowski v. Pfister, supra, 380 U.S. at 485, 85 S.Ct. 116. The governing rationale in the ordinary criminal prosecution was stated as follows by the Supreme Court in Stefanelli v. Minard, 1951, 342 U.S. 117, 72 S.Ct. 118, 96 L.Ed. 138, where an injunction was sought to prevent the use by the state in a criminal prosecution of the fruits of an unlawful search:

"The consequences of exercising the equitable power here invoked are not the concern of a merely doctrinaire alertness to protect the proper sphere of the States in enforcing their criminal law. If we were to sanction this intervention, we would expose every State criminal prosecution to insupportable disruption. Every question of procedural due process of law—with its far-flung and undefined range— would invite a flanking movement against the system of State courts by resort to the federal forum, with review if need be to this Court, to determine the issue. Asserted unconstitutionality in the impaneling and selection of the grand and petit juries, in the failure to appoint counsel, in the admission of a confession, in the creation of an unfair trial atmosphere, in the misconduct of the trial court—all would provide ready opportunities, which conscientious counsel might be bound to employ, to subvert the orderly, effective prosecution of local crime in local courts. To suggest these difficulties is to recognize their solution." 342 U.S. at 123, 72 S.Ct. at 121–122.

1. 28 U.S.C.A. § 2283:
   "A court of the United States may not grant an injunction to stay proceedings in a State court except as expressly authorized by Act of Congress, or where necessary in aid of its jurisdiction, or to protect or effectuate its judgments."

2. The Supreme Court has stated that this is an open question. Cameron v. Johnson, 1965, 381 U.S. 741, 85 S.Ct. 1751, 14 L.Ed.2d 715 and Cameron v. Johnson, 1968, 390 U.S. 611, 88 S.Ct. 1335, 20 L. Ed.2d 182, footnote 3.

A narrow exception to this general rule was announced in Dombrowski v. Pfister, supra. It was there held that where a statute regulating speech or expression was overbroad in its sweep, the mere threat of prosecution may have a "chilling effect on free expression". The court said, "Even the prospect of ultimate failure of such prosecutions by no means dispels their chilling effect on protected expression." The interest being protected by *Dombrowski's* exception to the *Jeannette* rule was the public interest in information about public issues or in the language of the court, "free expression— of transcendent value to all society, and not merely to those exercising their rights." 380 U.S. at 486, 85 S.Ct. at 1121.

■ Complainants here allege no such case for enjoining the prosecutions against them for violation of the state gambling laws or of the use therein of evidence obtained from the electronic surveillance. Whatever private interests they may have can be protected by the Georgia courts. No important public interests, such as were at the heart of *Dombrowski* or *Machesky* are threatened or chilled here. Thus, the prayer for injunctive relief is in all respects denied.

## II.

As to declaratory relief, complainants maintain that even if they are not entitled to injunctive relief, they are, nevertheless, entitled to a declaratory judgment that the Georgia surveillance statute is unconstitutional; that the warrants permitting the interception were defective; and that their right to privacy protects them from future interceptions.

They cite Zwickler v. Koota, supra, as standing for the proposition that a three-judge district court may not refuse to pass on applications for declaratory judgment as to the constitutionality of a state statute, even though injunctive relief is also sought and there are no special circumstances justifying injunctive relief. Nothing in *Zwickler*, however, supports such a broad reading.

We construe the *Zwickler* case as also being limited to public rights as distinguished from mere private rights in the area of state criminal prosecutions. We do not perceive, as complainants' argument, logically extended, would require, that *Zwickler* means that a federal court is bound to pass on the constitutionality of the usual state criminal statutes, such as arson, robbery, burglary and the like, at the request of defendants in state criminal prosecutions.

■ The district court in *Zwickler*, abstained from granting an injunction, and, therefore, thought itself compelled to abstain from granting the declaratory relief. Zwickler v. Koota, E.D.N.Y., 1966, 261 F.Supp. 985. The Supreme Court held only that abstention from granting an injunction does not necessarily close the door to the granting of declaratory relief.[3] The considerations may be different. Simply because the injunction question has been answered negatively does not mean, *ipso facto*, that the question of declaratory relief should be answered negatively. Thus, the holding of *Zwickler*, as we see it, was that the decision to grant an injunction and the decision to grant declaratory relief are two different decisions, governed by different sets of considerations. The court said:

> "We hold that a federal district court has the duty to decide the appropriateness and the merits of the declaratory request irrespective of its conclusion as to the propriety of the issuance of the injunction." 389 U.S. at 254, 88 S.Ct. at 399.

The court went on to say:

> "We express no view whatever with respect to the *appropriateness* of de-

---

3. The subsequent history of *Zwickler* is that on remand the district court granted declaratory relief, Zwickler v. Koota, E.D. N.Y., 1968, 290 F.Supp. 244, and was reversed by the Supreme Court on the ground that there was not a "controversy". Golden v. Zwickler, 1969, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113.

claratory relief in the circumstances of this case or the constitutional validity of the law." 389 U.S. at 255, 88 S.Ct. at 399. (Emphasis added)

This interpretation of *Zwickler* accords with the Declaratory Judgment Act, 28 U.S.C.A. § 2201, which is permissive in that it provides that the court "may declare the rights and other legal relations of any interested party seeking such declaration." The Supreme Court said in Public Service Commission of Utah v. Wycoff Co., 1952, 344 U.S. 237, 241, 73 S.Ct. 236, 239, 97 L.Ed. 291, 294, that § 2201 conferred "discretion on the courts rather than an absolute right upon the litigant."

■ Thus, the narrow question before this court is whether the discretionary power to render a delaratory judgment should be exercised. Our answer is in the negative. We agree with the opinion of the district court in Malone v. Emmet, M.D.Ala., 1967, 278 F.Supp. 193, 200, a case brought by state defendants charged with armed robbery and assault with intent to murder. The court outlined some of the considerations as to exercising discretion to grant declaratory judgments where the federal court's action will have a direct bearing on pending state criminal litigation, and said:

> " * * * a federal court should not, in the absence of *special circumstances,* intervene even by way of declaratory judgment in state criminal prosecutions. Special circumstances, of course, will appear if it is necessary for the federal court to protect some overriding federally guaranteed rights * * *." 278 F.Supp. at 200.

No such "overriding federally guaranteed rights" are here involved. We decline, in our discretion and in keeping with principles of comity, the requests for declaratory relief. Whatever First Amendment interests there might be in using the telephone to further private speech and association, and we express no opinion as to whether the plaintiffs have any meritorious First Amendment claims, they do not involve "overriding federally

guaranteed rights", Malone v. Emmet, supra, "of transcendent value to all society". Dombrowski v. Pfister, supra.

The action of complainants will be dismissed and defendants may present an order accordingly.